# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CMB Infrastructure Group IX, LP et al.,

    Plaintiffs

v.

Cobra Energy Investment Finance, Inc. et al.,

    Defendants

Case No.: 2:21-cv-00214-JAD-DJA

**Order Denying Motion to Remand; Resolving Motions to Dismiss; Granting in Part and Denying as Moot in Part Request for Jurisdictional Discovery; Granting Motion to Compel Arbitration; and Staying Case**

[ECF Nos. 17, 24, 51, 52, 53, 60]

The Crescent Dunes Project brought together numerous Nevadan, Texan, Californian, Delawarean, and Spanish entities and their subsidiaries; the United States Department of Energy; the Nevada Power Company; and hundreds of millions of dollars through a series of contracts and guaranties to fund, construct, and operationalize a solar-thermal power plant in Tonopah, Nevada. As a result of alleged misfeasance, nonfeasance, and malfeasance, the project failed, and the plant is now nonoperational. Through a half dozen motions, the project's diverse cast of characters asks this court to untangle their web of relationships and determine the consequences of those acts and omissions. By this order, I deny plaintiffs' motion to remand, dismiss with prejudice plaintiffs' claim for aiding and abetting tortious interference with contract, grant the Cobra defendants' motion to compel arbitration, and stay the remainder of this case except to permit limited jurisdictional discovery and motion practice as to Santander.

**Background**[1]

The three plaintiffs are two California limited partnerships—CMB Infrastructure Investment Group IX, LP (CMB 9) and CMB Infrastructure Investment Group XI, LP (CMB 11)—and a Texas limited-liability company, CMB Export, LLC (CMBE).[2]  Collectively, plaintiffs sue eight defendants: ACS Servicios Comunicaciones y Energia, S.L. (ACS), a Spanish corporation; Banco Santander, S.A. (Santander), a Spanish corporation; Tonopah Solar Energy, LLC (TSE), a Delaware company; and the Cobra defendants—Cobra Energy Investment, LLC (CEI), a Delaware company; Cobra Energy Investment Finance, Inc. (CEIF), a Delaware corporation; Cobra Industrial Services, Inc. (CISI), a Delaware corporation; Cobra Instalaciones y Servicios S.A. (CISSA), a Spanish corporation; and Cobra Thermosolar Plants, Inc. (CTPI), a Nevada corporation.[3]

Under the Second Amended and Restated Limited Liability Agreement of Tonopah Solar Investments, LLC (TSI Agreement), SolarReserve, Inc.'s (SR) indirect subsidiary, SolarReserve CSP Finance, LLC (SRCSP), and CEI each hold a 50% membership interest in Tonopah Solar Investments, LLC (TSI).[4]  TSI wholly owns Tonopah Solar Energy Holdings I, LLC (TSEH 1), which wholly owns Tonopah Solar Energy Holdings II, LLC (TSEH 2), which controls TSE.[5] Under the agreement that formed TSEH 1, the five-member TSEH 1 board consisted of one

---

[1] This is merely a summary of the allegations in the complaint.  Well-pled facts from the complaint in this section are taken as true for purposes of the motions to dismiss but should not be construed as findings of fact.  *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) ("Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor.").

[2] ECF No. 1-2 at ¶¶ 3, 11–13.

[3] *Id.* at ¶¶ 16–23.

[4] *Id.* at ¶ 37.

[5] *Id.* at ¶¶ 37–38.

Santander appointee, two SR appointees, two CEI appointees.[6]  The Crescent Dunes Project (the Project) is owned by TSE, was constructed by CTPI, and was operated by CTPI and SR's affiliates.[7]  CTPI's obligations as to the construction of the solar-thermal power plant in Tonopah, Nevada (the Plant) were laid out in its Engineering, Procurement, and Construction contract (EPC Contract) with TSE.[8]  CTPI's responsibilities under the EPC Contract were unconditionally guaranteed by ACS.[9]

   To finance construction of the Plant, SRCSP and ACS's indirect subsidiary, CEIF, obtained loans totaling $170 million from CMB 9 and CMB 11.[10]  The loans were evidenced by two loan agreements, one between CMB 9 and SRCSP (the Group 9 Loan) and guaranteed by SR, and the other between CMB 11 and CEIF (the Group 11 Loan) and guaranteed by CISSA.[11] In addition, TSE—an indirect subsidiary of SRCSP and CEI's Delawarean joint venture, Tonopah Solar Investments, LLC (TSI)[12]—obtained a $715 million United States Department of Energy (DOE)-guaranteed loan from the Federal Financing Bank (FFB), memorialized in the Loan Guaranty Agreement (LGA) signed by SR, CEI, and TSE.[13]  The loans were to be repaid through revenue generated from a power purchase agreement (PPA) between TSE and the Nevada Power Company (NV Energy), as well as other sources.[14]  Under the LGA, DOE had the

---

[6] *Id.*

[7] *Id.* at ¶ 2.

[8] *Id.*

[9] *Id.* at ¶ 49.

[10] *Id.* at ¶ 3.

[11] *Id.* at ¶¶ 3, 53–54.

[12] *Id.* at ¶¶ 15, 33.

[13] *Id.* at ¶ 51.

[14] *Id.* at ¶ 4.

right to appoint an additional TSEH 1 board member.[15]  But in 2018, on DOE's insistence, the TSEH 1 board was reconstituted to four members—one SR appointee, one CEI appointee, and two DOE appointees.[16]

Since its delivery, the Plant has failed to meet its power-generation requirements, has been offline for significant periods of time, and is now nonoperational.[17]  The Project is insolvent, and the Group 9 Loan agreement, the LGA, and the PPA are in default.[18]  Plaintiffs claim that the Plant is poorly constructed, and more than 9,000 distinct defects and seven major defects that affect its safety and regular use have been identified.[19]  Despite these foundational issues preventing provisional acceptance—a contractually defined milestone following a series of conditions precedent—from being achieved, SR, Santander, and the DOE amended the contract to deem it achieved anyway and transferred control of the incomplete Plant to TSE.[20]  Plaintiffs allege that following the premature handover, TSE discovered an additional 2,000 warranty claims.[21]

According to plaintiffs, CEIF, CTPI, and their affiliates conspired to hide the defects from plaintiffs through nondisclosures, misrepresentations, and lies about the progress of construction and the Plant's quality, all to prevent CMBE from enforcing its contractual rights and mitigating the losses suffered by CMB 9 at a time when mitigation would have substantially

---

[15] *Id.* at ¶ 38.

[16] *Id.*

[17] *Id.*

[18] *Id.* at ¶¶ 4, 8.

[19] *Id.* at ¶¶ 5–6.

[20] *Id.*

[21] *Id.* at ¶¶ 7–8.

satisfied the Group 9 Loan.[22]  The Group 9 Loan remains entirely unsatisfied.[23]  SR—which was forced out of the Project by the defendants and DOE—and SRCSP assigned their claims under the TSI Agreement to plaintiffs.[24]  In July 2020, TSE filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware, and plaintiffs asked that court to consider their claims in this lawsuit when developing TSE's reorganization plan.[25]

In state court, plaintiffs sued (1) CEIF for fraud and breach of the Group 11 Loan agreement for failure to make required disclosures and misleading plaintiffs about the Project's progress; (2) TSE and CEI for fraud in amending the EPC contract to deem provisional acceptance achieved when it was not, failure to disclose that prematurity, and misleading plaintiffs that defects would be resolved and that the Project was complete; (3) ACS, CISSA, CISI, and CEI for aiding and abetting fraud by directing nondisclosure and failing to correct misleading disclosures; (4) Santander for aiding and abetting fraud as to the provisional acceptance and by providing its proxy and later selling its interest in the Project to the Cobra defendants to prevent disclosures or material corrections from being made; (5) all defendants for intentional tortious interference with and/or aiding and abetting tortious interference with contractual relations for withholding information about the Project's failures as relevant to the Group 9 Loan agreement; (6) CEI for breach of the implied covenant of good faith and fair dealing as to the TSI Agreement for intentionally depriving SRCSP of the benefits of its bargain under that agreement; (7) Cobra defendants for aiding and abetting CEI's breach of the implied covenant of good faith and fair dealing; (8) TSE and the Cobra defendants for intentional tortious

---

[22] *Id.* at ¶ 9.

[23] *Id.* at ¶ 10.

[24] *Id.* at ¶ 15, 87–93.

[25] ECF No. 36-5 at ¶¶ 1, 3, 5.

interference with contractual relations as to the TSI Agreement for expelling SRCSP from that agreement; (9) CEI for breach of fiduciary duties owed to SRCSP under the TSI Agreement; and (10) TSE and the Cobra defendants for aiding and abetting CEI's breach of fiduciary duties.[26] The defendants removed the action to this court.[27]  Plaintiffs move to remand;[28] the Cobra defendants move to compel arbitration;[29] and Santander,[30] ACS,[31] and TSE[32] each move to dismiss.

## Discussion

## I.   Santander and ACS's motions to dismiss [ECF Nos. 51, 52, 53]

Santander raises a statute-of-limitations defense and moves to dismiss for want of personal jurisdiction and failure to state a claim.  ACS also moves to dismiss for want of personal jurisdiction.  Plaintiffs request that the court grant them jurisdictional discovery if their complaint insufficiently alleges personal jurisdiction over either Santander or ACS.  I find that this court may exercise personal jurisdiction over ACS and that plaintiffs have alleged some colorable and timely claims against Santander.  But because the complaint does not have the requisite detail necessary for the court to conclusively establish personal jurisdiction over Santander, I deny its motion without prejudice to its ability to renew it after some limited jurisdictional discovery.

---

[26] ECF No. 1-2 at ¶¶ 117–65.

[27] ECF No. 1.

[28] ECF No. 17.

[29] ECF No. 24.

[30] ECF No 51; ECF No. 52.

[31] ECF No. 53.

[32] ECF No. 60.

### A.      Personal-jurisdiction legal standard

The Fourteenth Amendment limits a forum state's power "to bind a nonresident defendant to a judgment of its courts,"[33] and Federal Rule of Civil Procedure 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction.  To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[34]  Because Nevada's long-arm statute reaches the constitutional zenith,[35] the question here is whether jurisdiction "comports with the limits imposed by federal due process."[36]  A court may only exercise jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[37]

Plaintiffs do not dispute that this court lacks general personal jurisdiction over ACS and Santander, both Spanish companies with principal places of business in Spain,[38] so I need only evaluate whether this court may exercise specific jurisdiction over them.  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[39]  This means that "the plaintiff[s] cannot be the only link between the defendant and the forum,"[40] and "[t]he

---

[33] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[34] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[35] Nev. Rev. Stat. § 14.065.

[36] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[37] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[38] *See* ECF No. 56.

[39] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

[40] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."[41]   Courts in the Ninth Circuit apply a three-prong test to resolve whether specific jurisdiction exists.[42]   The plaintiffs bear the burden of satisfying the first two by showing that (1) the defendant "purposefully direct[ed its] activities toward the forum," and (2) the claim "arises out of or relates to the defendant['s] forum-related activities."[43]   An insufficient showing at any prong requires dismissal,[44] but if plaintiffs meet their burden, the defendant can defeat jurisdiction only if it "present[s] a compelling case" that jurisdiction would be unreasonable.[45]

To establish purposeful direction, a plaintiff must show that the defendant (1) "committed an intentional act," (2) "expressly aimed at the forum state," (3) "causing harm that the defendant kn[ew was] likely to be suffered in the forum state."[46]   The intentional-act prong requires "intent to perform an actual, physical act in the real world" and an "external manifestation of" that

---

[41] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[42] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

[43] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted). Courts generally apply the purposeful-availment test to suits sounding in contract or negligence, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the purposeful-direction test to intentional torts.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018).  Although this lawsuit contains both contract and tort claims, the plaintiffs' claims against ACS and Santander largely sound in tort, so I do not address the purposeful-availment test.

[44] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

[45] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[46] *Axiom Foods*, 874 F.3d at 1069 (citations omitted).

intent.[47]   Express aiming requires something more than just "untargeted negligence"; the defendant's conduct must be intended to reach a person "whom the defendant knows to be a resident of the forum state."[48]   And the harm prong requires that the defendant's actions be "performed for the very purpose of having their consequences felt in the forum state."[49]

"[T]he formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction,"[50]   and "a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes" unless the subsidiary is the parent's general agent or acts as the parent's alter ego.[51]   A corporation can be subject to personal jurisdiction in the forum if it "direct[s] its agents . . . to take action there."[52] To satisfy the agency test, the plaintiffs must show "that the subsidiary represents the parent corporation by performing services 'sufficiently important to the parent corporation that if it did not have a representative to perform them, the parent corporation would undertake to perform substantially similar services.'"[53]   To satisfy the alter-ego test, the plaintiffs must show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no

---

[47] *Schwarzenegger*, 374 F.3d at 806 (citation omitted).

[48] *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087–88 (9th Cir. 2000), overruled in part on other grounds by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc).

[49] *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

[50] *Boschetto*, 539 F.3d at 1017 (citing *Burger King*, 471 U.S. at 478).

[51] *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (citations omitted).

[52] *Daimler AG*, 571 U.S. at 135 n.13.

[53] *Harris Rutsky*, 328 F.3d at 1135 (cleaned up) (citations omitted).

1  longer exist and (2) that failure to disregard their separate identities would result in fraud or

2  injustice."[54]

3  **B.      This court has personal jurisdiction over ACS.  [ECF No. 53]**

4          Taking the well-pled facts in the complaint as true and construing factual disputes in

5  plaintiffs' favor,[55] I find that ACS is subject to this court's personal jurisdiction.  ACS is the

6  parent company of CTPI,[56] owns 50% of TSI through its ownership of CEI, and provided a

7  payment and performance guaranty of CTPI's obligations under the EPC Contract.[57]  Plaintiffs

8  claim that ACS aided and abetted fraud as to CTPI's EPC Contract obligations, aided and abetted

9  CEI's breach of the implied covenant of good faith and fair dealing as to the TSI Agreement, and

10 tortiously interfered with the Group 9 Loan agreement.[58]  It's undisputed that the EPC Contract

11 was one of the primary instruments executed to launch the construction of the Nevada plant at

12 the heart of this lawsuit.[59]  ACS's status as CTPI's guarantor under that contract is sufficient for

13 this court to exercise personal jurisdiction over it.

14         Although the Ninth Circuit hasn't directly addressed the question of whether a

15 *corporation's* guaranty of another corporation's obligations in the forum state may give rise to

16 personal jurisdiction over the guarantor corporation, the court's analyses in *Forsythe v.*

17

---

18 [54] *Id.* at 1134 (cleaned up) (citations omitted).

19 [55] *Freestream Aircraft*, 905 F.3d at 602 ("Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor.").  This court may also
20 consider facts outside the complaint to resolve jurisdictional disputes.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (holding that when resolving a motion to
21 dismiss under Federal Rule 12(b)(2) and (3), a court may "consider facts outside the pleadings").

[56] ECF No. 1-2 at ¶¶ 20–21.

22 [57] *Id.* at ¶¶ 39, 49, 101, 104.

23 [58] *See generally id.* at 117–65.

[59] *Id.* at 2, 37.

1   *Overmyer* and *Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.* are

2   instructive.[60]   In both cases, the court affirmed a district court's finding of personal jurisdiction

3   over an *individual* who personally guaranteed a corporation's obligations in the forum state.[61]

4   The EPC Contract and ACS's guaranty, like the contract and guaranty in *Forsythe*, are expressly

5   subject to the laws of the forum.[62]   And like the guaranty in *Forsythe*, ACS's guaranty was a

6   condition of the primary contract.[63]   As here, the guarantors in *Global Commodities* were "key

7   players"[64] in the business relationship that gave rise to the primary contract and knowingly

8   "interject[ed themselves] into the transaction," assuming liability for the obligations of an

9   affiliated party.[65]   In guarantor-jurisdiction cases, the Ninth Circuit has cautioned that courts

10  "must be particularly careful to assure that the exercise of jurisdiction is reasonable,"[66]

11  considering the degree of interjection and whether the guarantor "could have reasonably foreseen

12

13  ─────────────────────

    [60] *Forsythe v. Overmyer*, 576 F.2d 779, 782–84 (9th Cir. 1978) (citations omitted); *Glob.*
14  *Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th
    Cir. 2020) (citations omitted).  Contrary to ACS's assertions, *see* ECF No. 53, the Ninth Circuit's
15  decision in *Kramer Motors, Inc. v. British Leyland, Ltd.* does not counsel otherwise.  In *Kramer*
    *Motors*, the court found that a domestic subsidiary of various foreign corporations was not their
16  alter ego or agent because the "parent and subsidiary . . . dealt with each other as distinct
    corporate entities" despite the parents having previously guaranteed some of the subsidiary's
17  obligations to American banks.  *Kramer Motors, Inc. v. Brit. Leyland, Ltd.*, 628 F.2d 1175,
    1177–78 (9th Cir. 1980).  But guarantor-jurisdiction cases like *Forsythe* and *Global*
18  *Commodities* do not relate to the alter-ego or agency tests, rather the guarantor's own actions are
    what subject it to the forum's jurisdiction.  And the parents' only "deliberate forum protection-
19  invoking act" relevant to *Kramer Motors* was approving a subsidiary's marketing scheme, not
    guaranteeing the subsidiary's forum-related obligations.  *Id.*

20  [61] *Forsythe*, 576 F.2d at 784; *Glob. Commodities*, 972 F.3d at 1110.

21  [62] *Forsythe*, 576 F.2d at 783; *see* ECF No. 57-1 at ¶¶ 9(a), 9(c); ECF No. 57-2 at ¶ 41(a).

    [63] *Forsythe*, 576 F.2d at 783; ECF No. 57-2 at ¶¶ 32.1, 40.1(f).
22
    [64] *Glob. Commodities*, 972 F.3d at 1110.

23  [65] *Id.* (citing *Forsythe*, 576 F.2d at 783).

    [66] *Forsythe*, 576 F.2d at 783 (citation omitted).

that they would be haled into [Nevada's] courts."[67]  ACS and its subsidiaries were substantially involved in both the financing and construction of the Project and ACS signed a guaranty that explicitly contemplates litigation under Nevada law.  I find that it is reasonable to exercise personal jurisdiction over ACS under these circumstances, so I deny ACS's motion to dismiss.[68]

### C.     The question of whether this court has personal jurisdiction over Santander merits limited jurisdictional discovery.  [ECF Nos. 51, 52, 56]

As to Santander, however, I find that "[t]he record is simply not sufficiently developed to enable [me] to determine whether the alter[-]ego or agency tests are met."[69]  Plaintiffs' allegations and the evidence show that Santander and Tonopah Solar I, LLC (TS 1)—Santander's wholly-owned subsidiary corporation, which had a significant stake in the Nevada plant[70]—were involved in the decision to conceal the Plant's performance issues by deeming unmet goals as achieved and thereby preventing plaintiffs from enforcing contractual liabilities for those unmet goals.[71]  Santander's subsidiary was listed as an owner of the Plant Project; was involved with the Plant's board of directors; failed to make required financial disclosures; eventually gave the Cobra defendants its proxy to control the Project despite knowing of potential misfeasance; and, later, sold them its stake in the Project.[72]

On these facts, absent further details about Santander and its subsidiary's corporate structures, how closely the former controlled the latter's day-to-day actions, and how those

---

[67] *Glob. Commodities*, 972 F.3d at 1110 (citation and internal quotation marks omitted).

[68] Because I find that this court can exercise jurisdiction over ACS, I deny as moot plaintiffs' request for jurisdictional discovery as to ACS.

[69] *Harris Rutsky*, 328 F.3d at 1135.

[70] ECF No. 51-3; ECF No. 57-4 at 6.

[71] ECF No. 1-2 at ¶¶ 6, 39, 102, 110–11.

[72] *Id.*

1   actions created effects in Nevada, dismissing Santander from this case for want of personal

2   jurisdiction would be premature.  I therefore deny Santander's motion to dismiss without

3   prejudice to its ability to refile after limited jurisdictional discovery.[73]  Plaintiffs and Santander

4   must meet and confer on the length and scope of discovery and file a proposed scheduling order

5   within 10 days.  Discovery is limited to the issue of whether Santander is subject to this court's

6   specific personal jurisdiction through its own actions or under either of the two agency theories.

7       **D.**   **Plaintiffs state some colorable claims against Santander.  [ECF Nos. 51, 52]**

8       Plaintiffs allege three claims against Santander: (1) aiding and abetting fraud regarding

9   provisional acceptance by providing the Cobra defendants its proxy to prevent the disclosure of

10   material facts and later selling its interest to them, (2) tortious interference with the Group 9

11   Loan agreement, and (3) aiding and abetting tortious interference with the Group 9 Loan

12   agreement by other defendants.[74]  Santander moves to dismiss for failure to state a claim and

13   argues that all of the plaintiffs' claims are time-barred.[75]  I grant Santander's motion as to aiding

14   and abetting tortious interference and dismiss that claim with prejudice, but I deny the motion on

15   the remaining claims.

16       ***1.***   ***Legal standard***

17       Federal pleading standards require plaintiffs to pled enough factual detail to "state a

18   claim to relief that is plausible on its face."[76]  This "demands more than an unadorned, the-

19

20

---

21   [73] *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding that district courts have "broad discretion to permit or deny

22   discovery" on the issue of personal jurisdiction).

    [74] *See generally* ECF No. 1-2 at ¶¶ 117–65.

23   [75] ECF No. 51; ECF No. 52.

    [76] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

defendant-unlawfully-harmed-me accusation"[77]; plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[78]  A complaint that fails to meet this standard must be dismissed.[79]  Additionally, a claim may be dismissed as untimely on a Federal Rule of Civil Procedure 12(b)(6) motion "only when the running of the statute of limitations is apparent on the face of the complaint."[80]

### 2.  *Plaintiffs state timely claims for tortious interference and aiding and abetting fraud.*

Santander argues that, because the allegedly fraudulent provisional acceptance occurred in December 2016 and this lawsuit was brought in May 2020, any claims against it are time-barred by Nevada's three-year statute of limitations.[81]  But under Nevada's "discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action."[82]  The allegations in the complaint establish that plaintiffs did not learn the extent of the wrongful acts and omissions relating to these claims until mid-to-late 2018, and that the alleged deception by the defendants, including Santander, continued well past the provisional acceptance.[83]  So plaintiffs filed this action within the limitations period.

---

[77] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[78] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis in original).

[79] *Twombly*, 550 U.S. at 570.

[80] *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

[81] ECF No. 52 at 15–17.

[82] *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990).

[83] ECF No. 1-2 at ¶¶ 39, 103.

1    In addition to being timely, plaintiffs' aiding-and-abetting-fraud claim is sufficiently pled

2 to withstand dismissal.  To state such a claim in Nevada, plaintiffs must demonstrate that (1)

3 CEIF defrauded plaintiffs; (2) Santander "was aware of its role in promoting" CEIF's fraud "at

4 the time it provided assistance"; and (3) that Santander "knowingly and substantially assisted

5 [CEIF] in committing" fraud.[84]  "The second and third elements should be weighed together, that

6 is, greater evidence supporting the second element requires less evidence of the third element,

7 and vice versa."[85]  Based on the complaint's allegations that CEIF committed fraud by

8 concealing and misrepresenting the true nature of the Project and issuing false reports as to the

9 Project's progress,[86] plaintiffs have established the first element.[87]

10    Plaintiffs have also sufficiently pled facts to establish the second and third elements.

11 They allege that Santander knew that the Plant's construction was delayed and deficient but

12 CEIF and others were reporting to plaintiffs that the Project was progressing well.[88]  And,

13 despite knowing that CEIF was misrepresenting the condition of the Plant to the Project's

14 creditors, Santander negotiated and approved the EPC Contract amendment that deemed

15 provisional acceptance achieved when countless defects remained unresolved and the requisite

16 benchmarks in the contract had not been met.[89]  So plaintiffs have stated a colorable claim for

17 aiding and abetting fraud.

18

---

19 [84] *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), overruled on other grounds by
   *GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001).

20 [85] *Id.*

21 [86] ECF No. 1-2 at ¶¶ 62, 103–04.

22 [87] Although Santander states that it "disagrees" that CEIF defrauded plaintiffs, it gives no reason
   for its disagreement.  ECF No. 52 at 13.

23 [88] *Id.* at ¶¶ 6, 62, 102, 110.

   [89] *Id.* at ¶¶ 62, 110.

They also plead a plausible tortious-interference claim against Santander.  To state a claim for tortious interference, plaintiffs must show that the defendant knew of an existing contract but took intentional acts to disrupt it, resulting in damage to plaintiffs.[90]  Here, plaintiffs allege that Santander knew of the Group 9 Loan agreement and intentionally negotiated and approved the EPC Contract amendment to hide defects in the Plant and forestall enforcement of plaintiffs' rights; and as a result, plaintiffs could not obtain repayment of the Group 9 Loan, which remains unpaid.[91]  Plaintiffs also allege that, for the same dilatory and obfuscating reasons, Santander gave its proxy to the Cobra defendants and eventually sold them its stake in the Project.[92]  These facts are sufficient for the tortious-interference claim to survive a motion to dismiss.

### 3.    *Plaintiffs fail to state a claim for aiding and abetting tortious interference.*

Plaintiffs' aiding-and-abetting-tortious-interference claim, however, does not fare as well.  They theorize that Santander aided and abetted CEIF's tortious interference with the Group 9 Loan agreement by "directing and encouraging [CEIF] not to make the requisite disclosures to" plaintiffs and at least partially by "negotiating and approving" the amendment to the EPC Contract that deemed provisional acceptance achieved when it was not.[93]  Whatever the merits of those allegations may be, plaintiffs cannot state a claim for aiding and abetting tortious interference because such a cause of action is not cognizable under Nevada law.  The only Nevada Supreme Court case plaintiffs cite to argue that the claim exists, *Dow Chemical*

---

[90] *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

[91] ECF No. 1-2 at ¶¶ 62, 110, 145.

[92] *Id.* at ¶¶ 110–11.

[93] ECF No. 56 at 102.

*Company v. Mahlum*, discusses aiding and abetting in the context of fraud.[94]  The court's reference to the basic theory of aiding-and-abetting liability under the Restatement (Second) of Torts[95] is insufficient to give rise to a cause of action in the context of tortious interference with contractual relations under state law.  So I grant the motion to dismiss as to this claim only and, because amendment would be futile, dismiss the claim with prejudice.

## II.     TSE's motion to dismiss [ECF No. 60]

TSE moves to dismiss for insufficient process, insufficient service of process, and failure to state a claim under Rules 12(b)(4), 12(b)(5), and 12(b)(6).[96]  For the same reasons discussed in subsection I(D)(3), *supra*, I grant the motion to dismiss as to plaintiffs' claim against TSE for aiding and abetting tortious interference with contractual relations, and I dismiss that claim with prejudice.  In all other respects, I deny TSE's motion to dismiss.

### A.     Process was sufficient, and TSE has not shown that it would suffer prejudice based on service issues.

TSE's first argument for dismissal is that it was served with a state-court summons 150 days after this action was removed to federal court—60 days after the time for service provided by the Federal Rules of Civil Procedure (FRCP) elapsed.[97]  When a state-court case is removed

---

[94] *Dow Chem. Co.*, 970 P.2d at 112 (citations omitted).

[95] *Id.* (citing Restatement (Second) of Torts § 876(b) (1979)).

[96] Although TSE only cites to Rule 12(b)(5) for its process-based arguments, *see* ECF No. 60 at 11–12, its points raise issues with both the sufficiency of service of process and the sufficiency of process itself.  So I consider its objections under Rules 12(b)(5) and 12(b)(4) and overrule them both.

[97] ECF No. 60 at 11–12; *see* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."); 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which any one or more of the defendants

to federal court, "the jurisdiction of the state court absolutely cease[s], and that of the [district] court of the United States immediately attache[s]."[98]   All defendants properly served in the state-court action are deemed properly served in the removed action, and unserved defendants must be served with a summons from the federal court.[99]   But in the Ninth Circuit, if a defendant "either initiated the removal or consented to it, and thus indisputably had notice of the action prior to removal and notice that it was now a federal action," that defendant may be properly served with a state-court summons after removal.[100]   Because it is undisputed that TSE consented to removal,[101] process was sufficient.[102]

And while plaintiffs served TSE with process 60 days after the FRCP 4(m) deadline, the rule "explicitly permits a district court to grant an extension of time to serve the complaint."[103] Although a district court's discretion in extension decisions is not "limitless,"[104] the court may consider factors "like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service."[105]   Here, TSE agrees that it was served with the state-court summons in July 2021,[106] and the evidence shows that it was served with a federal-court

---

has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.")

[98] *Nat'l S.S. Co. v. Tugman*, 106 U.S. 118, 122 (1882).

[99] *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967) (citing 28 U.S.C. § 1448).

[100] *Greenfield Advisors, LLC v. Salas*, 733 F. App'x 364, 367 (9th Cir. 2018).

[101] ECF No. 60 at 9; ECF No. 63 at 8.

[102] Because the state-court summons was sufficient process, I do not address whether the later federal-court summons was necessary or proper.  *See* ECF No. 62; ECF No. 65.

[103] *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (citations omitted).

[104] *Id.*

[105] *Id.* (citing *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998)) (cleaned up).
[106] ECF No. 60 at 11.

summons the following month.[107]  It has had extensive actual notice of the action since the

claims were brought in its bankruptcy proceedings,[108] and it consented to the removal of  state-

court action.[109]  And because TSE raises a statute-of-limitations defense to most of the claims

plaintiffs raise against it,[110] dismissal at this stage could impact plaintiffs' recovery.  Most

importantly, TSE does not argue that it was prejudiced by the delay in service, only that it feels it

was an "afterthought" in this litigation.[111]  So, good cause appearing, I excuse any defects in

plaintiffs' service upon TSE, and I deny TSE's request to dismiss to the extent it is based upon

insufficient process and insufficient service of process.

### B.    Plaintiffs state colorable claims against TSE.

Plaintiffs raise six claims against TSE: (1) fraud, (2) aiding and abetting fraud, (3)

tortious interference with the Group 9 Loan agreement, (4) aiding and abetting tortious

interference with the Group 9 Loan agreement, (5) tortious interference with the TSI Agreement,

and (6) aiding and abetting breach of fiduciary duties.[112]  As those against Santander, *see*

subsection I(D)(2), *supra*, the plaintiffs' claims against TSE don't run afoul of Nevada's three-

year statute of limitations for fraud and tortious-interference claims.  And as above, *see*

subsection I(D)(3), *supra*, I dismiss with prejudice plaintiffs' aiding-and-abetting-tortious-

interference-with-contractual-relations claim because it is not cognizable under Nevada law.  I

address the remaining claims in turn.

---

[107] ECF No. 62; ECF No. 65.

[108] ECF No. 36-1; ECF No. 36-2.

[109] ECF No. 1 at ¶ 8.

[110] ECF No. 60 at 12–13; ECF No. 66 at 3–5.

[111] ECF No. 66 at 3.

[112] *See* ECF No. 1-2 at ¶¶ 117–65.

### 1.   Fraud

To state a claim for fraud in Nevada, plaintiffs must demonstrate (1) a "false representation made by the defendant," (2) the defendant's "knowledge or belief that the representation is false," (3) the defendant's "intention to induce the plaintiff[s] to act or to refrain from acting in reliance upon the misrepresentation," (4) the plaintiffs' "justifiable reliance upon the misrepresentation," and (5) "[d]amage to the plaintiff[s] resulting from such reliance."[113] FRCP 9(b) "requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'"[114]  Those circumstances must include the "'who, what, when where, and how' of the misconduct charged."[115]  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[116]

"[A]llegations of fraud based on information and belief usually do not satisfy" Rule 9(b)'s particularity requirement, but "the rule may be relaxed as to matters within the opposing party's knowledge."[117]  This is especially pertinent in cases of "corporate fraud, [where] plaintiffs will not have personal knowledge of all of the underlying facts" and may not be able to "attribute particular fraudulent conduct to each defendant."[118]  This relaxed standard thus only requires plaintiffs alleging corporate fraud to plead the "facts on which the belief is founded" and

---

[113] *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

[114] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).

[115] *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

[116] Fed. R. Civ. P. 9(b).

[117] *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)).

[118] *Id.* (citing *Wool*, 818 F.2d at 1439–40).

1  "include the misrepresentations themselves with particularity and, *where possible*, the roles of

2  the individual defendants in the misrepresentations."[119]

3        Plaintiffs allege that TSE and many of its co-defendants knowingly misrepresented the

4  Project's progress in reports required by the Group 9 Loan agreement; made specific

5  certifications that no work remained beyond a potential "temporary shutdown" to repair the hot-

6  salt tank that "would impair the safe, reliable, normal and continuous operation" of the Plant; and

7  amended the EPC Contract to deem provisional acceptance achieved when it was not, all *for the*

8  *purpose of* precluding the Project's lenders—including plaintiffs—from enforcing their rights

9  under their loan agreements.[120]  But, plaintiffs contend, TSE knew that the numerous defects in

10  the Plant's construction and major necessary repairs would prevent it from ever being fully

11  functional, let alone profitable enough to repay the loans used to build it.[121]  Because of these

12  misrepresentations, plaintiffs could not timely enforce their rights under their contracts and

13  obtain repayment of the Group 9 Loan from SRCSP.[122]  With these facts, plaintiffs have

14  sufficiently pled the elements of fraud under the relaxed corporate-fraud standard.

15             **2.**     **Aiding and abetting fraud**

16        Plaintiffs have also pled a colorable claim for aiding and abetting fraud.  They allege that

17  CEIF engaged in fraud and TSE knowingly and substantially assisted it in that fraud by agreeing

18  to falsely certify progress to the DOE and then approving the EPC Contract amendment

19  regarding provisional acceptance with the intent to deceive the Project's financiers.  Those

20  factual allegations are sufficient for the claim to survive a motion to dismiss.  Though TSE

21  ─────────────────────

22  [119] *Id.* (citing *Wool*, 818 F.2d at 1440).

   [120] *See* ECF No. 1-2 at ¶¶ 9, 62–63, 77–86, 119.

23  [121] *Id.* at ¶¶ 60, 79–87, 90.

   [122] *Id.* at ¶ 127.

protests that it is the subject of a "'shotgun' pleading,"[123] TSE ignores that it is named throughout the complaint as a willing participant in CEIF's allegedly fraudulent activities; plaintiffs did not just tack on its name to each of their claims.[124]  Finally, TSE seeks to avoid liability by intimating that it's "implausible" for TSE to have aided and abetted CEIF's fraud while engaged in separate arbitration with CTPI.[125]  But being on opposite sides of one dispute does not necessitate being at odds in of every decision made in a complex multiplayer project. So plaintiffs have sufficiently pled this claim to survive dismissal at this stage of the litigation.

### 3.    Tortious interference

The same misrepresentations that give rise to plaintiffs' fraud claims against TSE also undergird one of their tortious-interference claims.  Plaintiffs allege that TSE was the beneficiary of two loans made by plaintiffs to SRCSP and CEIF, both of which funded the Plant's construction and operationalization.[126]  Taking these facts as true, plaintiffs' general assertion that TSE knew—or at least knew of facts from which it could be inferred—that the Group 9 Loan agreement existed establishes TSE's knowledge of the contract with which plaintiffs assert TSE interfered.[127]  Plaintiffs further allege that TSE's intent in making misrepresentations about the Plant's progress was to forestall enforcement and collection efforts by the lending plaintiff,[128] and those misrepresentations caused actual disruption of the Group 9 Loan agreement,

---

[123] ECF No. 60 at 15.

[124] See, e.g., ECF No. 1-2 at ¶¶ 80–82.

[125] ECF No. 66 at 8.

[126] ECF No. 1-2 at ¶¶ 33–34, 53–56.

[127] J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003) ("Because interference with contractual relations is an intentional tort, the plaintiff must demonstrate that the defendant knew of the existing contract, or at the very least, establish 'facts from which the existence of the contract can reasonably be inferred.'" (citations and internal quotation marks omitted)).

[128] ECF No. 1-2 at ¶ 144.

preventing it from being repaid and depriving plaintiffs of tens of millions of dollars.[129]  Thus, plaintiffs state a plausible claim for tortious interference with that contract.

Plaintiffs' second tortious-interference claim concerns the TSI Agreement.  They allege that when SR decided to replace its appointee on TSE's board of managers, which it had an unconditional right to do under the TSI Agreement, TSE demanded that SR obtain "upstream consents" before doing so.[130]  That demand prevented SR from getting access to TSE's books and records, which it needed to assess a DOE deal that TSE had requested consent to within ten days.[131]  The only alternative to the deal was a capital call that "TSE and the Cobra defendants kn[e]w" was impossible to fulfill due to the Project's failure.[132]  That deal granted the Cobra defendants a release from liabilities for the Project, made SRCSP's interest in TSE "valueless," and eventually led to SR's ouster from TSE management.[133]  Plaintiffs allege that the deal and capital call were "done in furtherance of the Cobra [d]efendants' efforts to . . . shield themselves from liability" for the Project's difficulties and defects.[134]  SR and SRCSP assigned their claims under the TSI Agreement to plaintiffs.[135]  SR's investment in TSE under the TSI Agreement was made worthless by TSE's disruption of its right to appoint a board member and access TSE's books, and also by the resulting DOE deal.[136]  Plaintiffs have thus sufficiently stated a claim for tortious interference with the TSI Agreement.

---

[129] *Id.* at ¶ 145.

[130] *Id.* at ¶ 101.

[131] *Id.* at ¶¶ 98–111.

[132] *Id.* at ¶¶ 108–11.

[133] *Id.* at ¶¶ 108, 113–14.

[134] *Id.* at ¶ 116.

[135] *Id.* at ¶ 15.

[136] *Id.* at ¶ 157.

### 4.   *Aiding and abetting fiduciary breach*

Finally, plaintiffs' claim against TSE for aiding and abetting CEI's breach of fiduciary duties may proceed as well.  Four elements must be shown for such a claim to survive a motion to dismiss: "(1) a fiduciary relationship exists, (2) the fiduciary breached the fiduciary relationship, (3) the third party knowingly participated in the breach, and (4) the breach of the fiduciary relationship resulted in damages."[137]  Plaintiffs allege that CEI owed SRCSP fiduciary duties under the TSI Agreement; CEI breached those duties by ousting SRCSP from TSI; TSE blocked SRCSP's access to TSE's books, sought consent to the DOE deal within ten days and without realistic alternatives, and negotiated a release from liability for the Cobra defendants; and that pre-negotiated deal and ouster resulted in damage to SRCSP.  TSE does not dispute that CEI owed and breached fiduciary duties to SRCSP; it only argues that TSE's actions did not substantially assist those breaches because SRCSP could not afford the capital call anyway and the Delaware Court of Chancery has already rejected the claim.[138]

But both sides agree SRCSP could not have paid the hundreds of millions of dollars requested in the capital call.  Plaintiffs' allegations focus more so on the call being pitched as an alternative when TSE was actually forcing the parties into the pre-negotiated DOE deal that would release the Cobra defendants—including CEI—from all liability while also depriving SRCSP of its interest in TSE.[139]  And whatever the merits of the Delaware court's decision, it appears that the Supreme Court of Delaware has since vacated it, mooting that concern.[140]  So plaintiffs have sufficiently pled this claim at this stage.

---

[137] *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011).

[138] ECF No. 60 at 17–20.

[139] ECF No. 1-2 at ¶¶ 163–65.

[140] ECF No. 64-1.

### III.     Plaintiffs' motion to remand [ECF No. 17]

Plaintiffs move to remand to state court on three bases: (1) untimeliness, (2) abstention, and (3) lack of subject-matter jurisdiction.[141]  The first two can be swiftly disposed of.  Under 28 U.S.C. § 1446, one of the many statutes Santander raised to support removal jurisdiction, defendants must file their notice of removal within 30 days of being served with the complaint.[142]  Because Santander was served on January 19, 2021, and the defendants removed on February 9, 2021,[143] removal was timely.[144]  Plaintiffs next argue that the court should abstain from exercising jurisdiction over this case under 28 U.S.C. § 1334(c),[145] but decades-old Ninth Circuit precedent forecloses that argument.  Removing a state-court action ends the state court's jurisdiction and only the resulting federal case remains; thus, removal extinguishes the comity concerns about parallel state-court and federal-court proceedings embodied in § 1334(c).[146]  So abstention is unwarranted here.

---

[141] ECF No. 17.

[142] 28 U.S.C. § 1446 ("Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal."); *see* ECF No. 1 at ¶¶ 1–2.

[143] ECF No. 1-5.  Santander also argues that it was not properly served and reserves challenges to service, but it has not moved to dismiss on that basis, so that issue is not before the court.  ECF No. 1 at ¶ 8.

[144] The Supreme Court has held, in a materially similar circumstance, that the removal clock only begins to run upon service of process.  *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (stating that it would be "so strange . . . to set removal apart from all other responsive acts, to render removal the sole instance in which one's procedural rights slip away before service of a summons, *i.e.*, before one is subject to any court's authority").

[145] ECF No. 17 at 10–11; ECF No. 41 at 10–11.

[146] *In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001) (recognizing that "abstention can only exist [if] there is a parallel proceeding in state court" and as a result of removal no "state proceeding thereafter exists," so abstention is "inapplicable" (cleaned up and citations omitted)); *Tugman*, 106 U.S. at 122.  Plaintiffs' invocation of a circuit-split on the post-confirmation applicability of § 1334 abstention is irrelevant when the Ninth Circuit—whose decisions bind this court—has addressed the question and chosen a view.  *See* ECF No. 41 at 4, 10.

Plaintiffs' subject-matter jurisdiction argument fares no better.  This court has jurisdiction under 28 U.S.C. § 1452,[147] which gives federal courts "original . . . jurisdiction of all civil proceedings arising . . . in or related to cases under" the United States Bankruptcy Code.[148] "Related to" jurisdiction becomes more limited when a bankruptcy court confirms the relevant bankruptcy plan, but the Ninth Circuit has held that jurisdiction nevertheless exists if there is a "close nexus" between the bankruptcy plan and the proceeding in which the plan is invoked to confer federal jurisdiction.[149]  Cases involving "the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."[150]

TSE's bankruptcy and its reorganization plan loom large here because TSE was the primary entity charged with operationalizing and operating the Plant whose failure precipitated this case.  But plaintiffs' own actions in and since TSE's bankruptcy case alone establish jurisdiction under the "close nexus" test.  Plaintiffs affirmatively raised the claims they assert in this lawsuit in the bankruptcy proceedings, and the asked the bankruptcy court to consider them when developing TSE's reorganization plan.[151]  The court did so, requiring the Cobra defendants or their designee to issue a $6 million letter of credit to be drawn on if this lawsuit results in a final judgment for plaintiffs and against TSE.[152]  Should that happen, though, TSE would be

---

[147] Because I find that this court has subject-matter jurisdiction under § 1452, I need not and do not address whether the court independently has jurisdiction under 9 U.S.C. §§ 203 or 205.

[148] 28 U.S.C. § 1452(b).

[149] *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193–95 (9th Cir. 2005) (citation and internal quotation marks omitted).

[150] *Id.* (citation and internal quotation marks omitted).

[151] ECF No. 36-5 at ¶¶ 1, 3, 5.

[152] ECF No. 1-13 at 62.

jointly and severally liable for $90 million or more in damages, so it's possible TSE would be subject to more liability than its reorganization plan currently allows.[153]  Plaintiffs openly recognize that risk too, having already appealed the plan-confirmation order to the United States District Court for the District of Delaware for that very reason.[154]  Because there is a close nexus between this action and the bankruptcy plan, plaintiffs' motion to remand is denied.

## IV.   The Cobra defendants' motion to compel arbitration [ECF No. 24]

The Federal Arbitration Act (FAA) states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy" arising out of the contract or transaction "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."[155]  The FAA permits any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition any federal district court for an order compelling arbitration in the manner provided for in the arbitration agreement.[156]  The FAA "establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate"[157] and provides "that where [a] contract contains an arbitration clause, there is a presumption of arbitrability."[158]  "By its terms, the Act 'leaves no place for the exercise of discretion by a

---

[153] ECF No. 1-2 at ¶ 155.

[154] *See* ECF No. 36-4.

[155] 9 U.S.C. § 2.

[156] *Id.* at § 4.

[157] *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974)) (internal citation, quotation marks, and alteration marks omitted).

[158] *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs, Inc v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (internal quotation marks omitted).

1  district court, but instead mandates that district courts *shall* direct the parties to proceed to

2  arbitration on issues as to which an arbitration agreement has been signed.'"[159]

3        The district court's role under the FAA is "limited to determining (1) whether a valid

4  agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute

5  at issue."[160]  In answering these questions, the court must "interpret the contract by applying

6  general state-law principles of contract interpretation, while giving due regard to the federal

7  policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of

8  arbitration."[161]  The party seeking to compel arbitration has the burden to show that both of these

9  questions must be answered in the affirmative.[162]  "If the response is affirmative on both counts,

10 then the [FAA] requires the court to enforce the arbitration agreement in accordance with its

11 terms."[163]

12        **A.    An arbitration agreement exists, and this dispute falls within it.**

13        The Cobra defendants seek to compel arbitration based on the arbitration clause in

14 CISSA's guaranty of "all [of CEIF's] performance and financial obligations" under the Group 11

15 Loan agreement.[164]  Under the guaranty, New York law applies and "any dispute[]," "suit, action

16 or proceeding arising out of, in connection with, or with respect to" the guaranty must be finally

17 resolved in "the International Court of Arbitration of the International Chamber of Commerce . .

18

---

19 [159] *Chiron Corp. v. Ortho Diagnostic Sys*., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean
20 Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

   [160] *Id.*

21 [161] *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

22 [162] *Nguyen v. Barnes and Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *Ashbey v. Archstone
   Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

23 [163] *Chiron Corp.*, 207 F.3d at 1130.

   [164] ECF No. 24; ECF No. 24-2 at Recital E.

. in accordance with the ICC Rules of Arbitration."[165]  Plaintiffs argue that the guaranty and its provisions no longer apply because the Group 11 Loan has been fully repaid.[166]  But "the prevailing general rule of both New York and Federal common law of contracts is that, absent a clear manifestation of contrary intent, it is presumed that the parties intended that the arbitration forum for dispute resolution provided in an agreement will survive termination of the agreement as to subsequent disputes *arising thereunder*."[167]  And plaintiffs' claims revolve around various disclosure requirements—quintessential performance obligations—by which they allege CEIF failed to abide and, by extension, with which CISSA failed to guarantee compliance.  So the arbitration clause exists and remains active as to suits in connection with those unmet responsibilities, such as this one.

Because the ICC Rules, as incorporated by the guaranty, delegate claim-arbitrability questions to the arbitrator,[168] any argument plaintiffs make about which claims can and cannot be arbitrated are for the arbitrator to resolve.  The Supreme Court has made clear that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue[—]even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."[169]

---

[165] ECF No. 24-2 at ¶¶ 5.7, 10.14.

[166] ECF No. 35 at 4.

[167] *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 628 (N.Y. 1997).

[168] *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), as amended (Aug. 28, 2017); ECF No. 24-2 at ¶¶ 5.7, 10.14.

[169] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

1

2

**B.      Both signatory and nonsignatory defendants may enforce the arbitration agreement against both signatory and nonsignatory plaintiffs.**

3    Plaintiffs' final argument against arbitration—that parties who did not sign the guaranty

4   cannot compel or be compelled to arbitrate the claims in this case—also fails.  "[N]onsignatories

5   may be bound to the arbitration agreements of others [under] common law principles of contract

6   and agency law."[170]  And here, the common-law theories of estoppel and agency are especially

7   relevant because plaintiffs allege that all the defendants "acted in concert [and with] common

8   purpose, [acting as] agents, . . . co-conspirators, or alter egos of one or more of the other"

9   defendants.[171]  Because "[f]actual assertions in pleadings . . . are considered judicial

10   admissions," plaintiffs are estopped from denying their own allegations of agency, so all the

11   defendants—signatory and nonsignatory alike—may compel arbitration.[172]

12    The guaranty is governed by New York law, so I also consider the law of that state.  New

13   York courts have recognized a direct-benefits estoppel theory, in which "a nonsignatory may be

14   compelled to arbitrate [if] the nonsignatory 'knowingly exploits' the benefits of an agreement

15   containing an arbitration clause, and receives benefits flowing directly from the agreement."[173]

16   By asserting claims based on the guaranty jointly with the signatory plaintiff, the nonsignatory

17   plaintiffs are attempting to exploit the benefits of that agreement.  Plaintiffs are thus equitably

18

19

20   [170] *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014).

21   [171] ECF No. 1-2 at ¶ 25.

22   [172] *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions

23   conclusively binding on the party who made them.").

[173] *Belzberg v. Verus Invs. Holdings Inc.*, 999 N.E.2d 1130, 1134 (N.Y. 2013).

estopped from avoiding arbitration under the same agreement that gives rise to many of their own claims.[174]

**V.     Stay pending arbitration**

Once a district court refers any claim in a proceeding to an arbitrator, it must "on application of one of the parties[,] stay the trial of the action until" arbitration is complete.[175] The court has discretion to apply such a stay to "persons who are parties to the underlying dispute but not to the arbitration agreement."[176]  So except as otherwise provided in this order, I grant the Cobra defendants' request for a stay pending arbitration.[177]

**Conclusion**

IT IS THEREFORE ORDERED that defendant ACS Servicios Comunicaciones y Energia, S.L.'s motion to dismiss for want of personal jurisdiction **[ECF No. 53] is DENIED**.

IT IS FURTHER ORDERED that defendant Banco Santander, S.A.'s motion to dismiss **[ECF Nos. 51, 52] is GRANTED IN PART and DENIED IN PART**.  Plaintiffs' claim for aiding and abetting tortious interference with contractual relations is **DISMISSED with prejudice** because amendment would be futile; the motion is denied in all other respects.

IT IS FURTHER ORDERED that plaintiffs' request for jurisdictional discovery **[ECF No. 56] is GRANTED IN PART and DENIED IN PART as moot**.  Plaintiffs and defendant Banco Santander, S.A., must meet and confer on the length and scope of discovery and file a proposed scheduling order within 10 days.  Discovery is limited to the issue of whether

---

[174] *Cf. Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 285 (S.D.N.Y. 2015).

[175] 9 U.S.C. § 3.

[176] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983).

[177] *See* ECF No. 24 at 20.

31

Santander is subject to this court's specific personal jurisdiction through its own actions or under either of the two agency theories.

IT IS FURTHER ORDERED that defendant Tonopah Solar Energy, LLC's motion to dismiss **[ECF No. 60] is GRANTED IN PART and DENIED IN PART**.  Plaintiffs' claim for aiding and abetting tortious interference with contractual relations is **DISMISSED with prejudice** because amendment would be futile; the motion is denied in all other respects.

IT IS FURTHER ORDERED that plaintiffs' motion to remand to Nevada state court **[ECF No. 17] is DENIED**.

IT IS FURTHER ORDERED that Cobra Energy Investment, LLC; Cobra Energy Investment Finance, Inc.; Cobra Industrial Services, Inc.; Cobra Instalaciones y Servicios S.A.; and Cobra Thermosolar Plants, Inc.'s motion to compel arbitration **[ECF No. 24] is GRANTED and, with the exception of (1) the Santander jurisdictional-discovery proceedings permitted by this order and (2) the proceedings related to the renewed motion to dismiss for want of jurisdiction that Santander may file after those discovery proceedings, this action is STAYED pending the conclusion of the arbitration of the claims against Cobra Energy Investment, LLC; Cobra Energy Investment Finance, Inc.; Cobra Industrial Services, Inc.; Cobra Instalaciones y Servicios S.A.; and Cobra Thermosolar Plants, Inc. in compliance with the arbitration agreement**.

_____
U.S. District Judge Jennifer A. Dorsey
November 15, 2021