# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

CMB Infrastructure Group IX, LP et al.,

             Plaintiffs

  v.

Cobra Energy Investment Finance, Inc. et al.,

             Defendants

Case No. 2:21-cv-00214-CDS-DJA

**Order Denying Plaintiffs' Motion to Vacate Arbitration Award, Granting Defendants' Motion to Compel Arbitration, and Granting Defendants' Cross-Motion to Confirm Arbitration Award**

[ECF Nos. 93, 101, 108, 118]

The Crescent Dunes Project brought together numerous Nevadan, Texan, Californian, Delawarean, and Spanish entities and their subsidiaries; the United States Department of Energy; the Nevada Power Company; and hundreds of millions of dollars through a series of contracts and guaranties to fund, construct, and operationalize a solar-thermal power plant in Tonopah, Nevada. After the Crescent Dunes Project failed, the present parties—which represent both signatories and non-signatories to the initial agreements—were compelled to arbitrate the claims. Considering the ultimate arbitrating tribunal's decision, I grant defendants' motion to compel arbitration on the remaining claims (ECF No. 93),[1] deny plaintiffs' motion to vacate the arbitration award (ECF No. 108),[2] and grant the defendants' cross-motion to confirm the arbitration award (ECF No. 118).[3] The three motions are fully briefed.[4]

---

[1] Defendants filed both an unsealed (ECF No. 93) and a sealed (ECF No. 101) version of this motion. I refer to the unsealed version throughout this order.

[2] Plaintiffs filed both a motion to vacate (ECF No. 108) and a memorandum in support of their motion to vacate (ECF No. 109).

[3] Plaintiffs filed a "Reply in Support of Plaintiffs' Motion to Vacate Arbitration and Opposition to Defendants' Motion to Confirm Award" at ECF No. 119 as a response to the defendants' motion at ECF No. 118 that is identical to their reply at ECF No. 121 regarding the plaintiffs' motion to vacate. I construe the "reply" at ECF No. 119 to be the plaintiffs' opposition to the defendants' motion at ECF No. 118.

[4] ECF No. 115; ECF No. 117; ECF No. 119; ECF No. 121; ECF No, 122; ECF No. 123.

I.      **Background**

Except as otherwise stated, the facts of this case are incorporated from the November 15, 2021, order at ECF No. 70.[5] The three plaintiffs involved in this case are CMB Infrastructure Investment Group IX, LP (CMB 9), CMB Infrastructure Investment Group XI, LP (CMB 11), and CMB Export, LLC (CMBE). Am. Compl., ECF No. 1-2 at 2. Collectively, plaintiffs sued eight defendants: ACS Servicios Comunicaciones y Energia, S.L. (ACS); Banco Santander, S.A. (Santander); Tonopah Solar Energy, LLC (TSE); and the Cobra defendants—Cobra Energy Investment, LLC (CEI); Cobra Energy Investment Finance, Inc. (CEIF); Cobra Industrial Services, Inc. (CISI); Cobra Instalaciones y Servicios S.A. (CISSA); and Cobra Thermosolar Plants, Inc. (CTPI).

Under the Second Amended and Restated Limited Liability Agreement of Tonopah Solar Investments, LLC (TSI Agreement), SolarReserve, Inc.'s (SR) indirect subsidiary, SolarReserve CSP Finance, LLC (SRCSP), and CEI each hold a fifty percent membership interest in Tonopah Solar Investments, LLC (TSI). *Id.* at 11. TSI wholly owns Tonopah Solar Energy Holdings I, LLC (TSEH 1), which wholly owns Tonopah Solar Energy Holdings II, LLC (TSEH 2), which controls TSE. *Id.* Under the agreement that formed TSEH 1, the five-member TSEH 1 board consisted of one Santander appointee, two SR appointees, two CEI appointees. *Id.* The Crescent Dunes Project (the Project) is owned by TSE, was constructed by CTPI, and was operated by CTPI and SR's affiliates. *Id.* at 3. CTPI's obligations as to the construction of the solar-thermal power plant in Tonopah, Nevada (the Plant) were laid out in its Engineering, Procurement, and Construction contract (EPC Contract) with TSE. *Id.* CTPI's responsibilities under the EPC Contract were unconditionally guaranteed by ACS. *Id.* at 14.

To finance construction of the Plant, SRCSP and ACS's indirect subsidiary, CEIF, obtained loans totaling $170 million from CMB 9 and CMB 11. *Id.* at 3–4. The loans were

---

[5] The November 2021 order was issued by the Honorable Jennifer A. Dorsey. ECF No. 70. This action was administratively reassigned to me on April 13, 2022. ECF No. 76.

evidenced by two loan agreements, one between CMB 9 and SRCSP (the Group 9 Loan) and guaranteed by SR, and the other between CMB 11 and CEIF (the Group 11 Loan Agreement) and guaranteed in an agreement (Group 11 Guaranty Agreement) by CISSA. *Id.* at 3–4, 15. In addition, TSE—an indirect subsidiary of SRCSP and CEI's Delawarean joint venture, Tonopah Solar Investments, LLC (TSI)—obtained a $715 million United States Department of Energy (DOE)-guaranteed loan from the Federal Financing Bank (FFB), memorialized in the Loan Guaranty Agreement (LGA) signed by SR, CEI, and TSE. *Id.* at 6, 10, 14–15. The loans were to be repaid through revenue generated from a power purchase agreement (PPA) between TSE and the Nevada Power Company (NV Energy), as well as other sources. *Id.* at 4. Under the LGA, DOE had the right to appoint an additional TSEH 1 board member. *Id.* at 11. But in 2018, on DOE's insistence, the TSEH 1 board was reconstituted to four members—one SR appointee, one CEI appointee, and two DOE appointees. *Id.*

Plaintiffs filed suit in Nevada state court after the power plant failed to deliver the expected results and ultimately became nonoperational. *Id.* at 1, 18–19. Defendants removed the action to the U.S. District Court for the District of Nevada. ECF No. 1. The action was then stayed, and the parties were ordered to arbitrate the claims.[6] ECF No. 70 at 32. Following the November 2021 order, plaintiffs requested arbitration against all defendants but Santander with the International Chamber of Commerce (ICC), incorporating the amended complaint by reference. *See* Pls.' Req. for Arb., ECF No. 97 (sealed). Plaintiffs then challenged the ICC Tribunal's jurisdiction over the claims, and after additional briefing on this issue, the tribunal deferred judgment. *See* ICC Procedural Order No. 2, ECF No. 98 (sealed). The tribunal heard testimony and argument on the merits of the claims as well as on the remaining jurisdictional issues. ICC Award, Pls.' Ex. No. 19, ECF No. 111-2 at 418. In their closing arguments, plaintiffs cited to additional cases relating to nominal damages that had not previously been raised. *Id.* The

---

[6] With the exception of defendant Santander, for which the court permitted additional jurisdictional discovery and allowed the filing of a renewed motion to dismiss for want of jurisdiction. ECF no. 70 at 32.

tribunal ordered supplemental briefing on the issue. *Id.* Ultimately, in its "Award" dated January 5, 2024, the tribunal dismissed plaintiffs' claims 1 through 5,[7] determined that it lacked jurisdiction to determine claims 7 through 10,[8] and awarded defendants a total of $2,437,221 in arbitration and legal fees.[9] *Id.* at 493–94. Plaintiffs now move to have the Award vacated, and defendants move to confirm the Award and compel arbitration on claims 7 to 10.

## II.    Discussion

### A.  Plaintiffs' motion to vacate the arbitration award (ECF No. 108)

#### 1.  *Legal standard*

The Award is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and is subject to vacatur on the grounds set forth in 9 U.S.C. § 10(a), the Federal Arbitration Act ("FAA"). Specifically, under section 10, an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

Section 10 of the FAA provides four grounds to vacate an award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which

---

[7] As stated in plaintiffs' first amended complaint, claim 1 alleges that CEIF breached the loan agreement; claim 2 alleges that CEIF committed fraud; claim 3 alleges that TSE and CEI committed fraud; claim 4 alleges that ACS, CISSA, CEI, and Santander aided and abetted fraud; and claim 5 alleges that all defendants intentionally interfered with contractual relations. Am. Compl., ECF No. 1-2 at 31–36.

[8] As stated in plaintiffs' first amended complaint, claim 7 alleges that CEI breached the implied covenant of good faith and fair dealing as to the TSI Agreement for intentionally depriving SRCSP of the benefits of its bargain under that agreement; claim 8 alleges that TSE and the Cobra defendants committed intentional tortious interference with contractual relations as to the TSI Agreement by expelling SRCSP from that agreement; claim 9 alleges that CEI breached its fiduciary duties owed to SRCSP under the TSI Agreement; and claim 10 alleges that TSE and the Cobra defendants aided and abetted CEI's breach of fiduciary duties. ECF No. 1-2 at 37–39.

[9] I note that claim 6, which alleged aiding and abetting tortious interference with contract, was dismissed with prejudice prior to the arbitration. ECF No. 70 at 32.

the rights of any party have been prejudiced; and (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). These grounds are "exclusive." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)

The FAA provides a reviewing court with "extremely limited authority to review arbitration awards." *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1239 (9th Cir. 2022). "Congress has carefully limited [the courts'] authority to review arbitration awards under the FAA, which does not permit 'unnecessary public intrusion into private arbitration procedures.'" *HayDay Farms*, 55 F.4th at 1243. For a tribunal to exceed its power, it must not have "merely interpret[ed] or appl[ied] the governing law incorrectly." *Sanchez v. Elizondo*, 878 F.3d 1216, 1221 (9th Cir. 2018) (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 997 (9th Cir. 2003)). The award must be "completely irrational," or exhibit a "manifest disregard of law." *Id.* at 1221–22.

To be "completely irrational," a court must "decide only whether the arbitrator's decision draws its essence from the contract, not the rightness or wrongness of the arbitrator's contract interpretation." *HayDay Farms*, 55 F.4th at 1241 (quoting *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (cleaned up). An arbitral award is not "completely irrational" so long as the "arbitrators' interpretation [of the contract] was 'plausible.'" *Lagstein v. Certain Underwriters at Lloyd's of London*, 607 F.3d 634, 643 (9th Cir. 2010) (citation omitted) (explaining how there is "no authority to vacate an award solely because of an alleged error in contract interpretation"). The court "must defer to the arbitrator's decision as long as the arbitrator even arguably construed or applied the contract." *HayDay Farms*, 55 F.4th at 1241 (citation omitted). That limited inquiry also applies when "determining whether the arbitrator[s] exceeded [their] jurisdiction." *Schoenduve Corp. v. Lucent Techs.*, Inc., 442 F.3d 727, 733 (9th Cir. 2006) (quoting *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993)). Courts give the tribunal's interpretation of the scope of its power the same level of deference as

1  its determination on the merits. *Lagstein*, 607 F.3d at 643–44. A dispute "need only touch matters

2  covered by the contract . . . for the court to resolve all doubts in favor of arbitration." *Operation:*

3  *£Heroes, Ltd. V. Procter & Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1119 (D. Nev. 2012).

4      The party challenging the award bears the "heavy burden" to justify vacatur by "clear and

5  convincing evidence." *Lift Equip. Certification Co. v. Lawrence Leasing Corp.*, 2016 WL 5346951, at *1

6  (D. Nev. Sept. 23, 2016).

7      **2.  *The tribunal did not exceed its scope of authority by including non-***
   ***signatories (including CMB 9) of the CMB 11 Loan Agreement and the***
8      ***Agreement in the arbitration because this was already the law of the case.***

9      Plaintiffs argue that the tribunal exceeded its scope of authority because its decision

10 bound CMB 9 and other non-signatories to the 2013 Group 11 Loan and Guaranty Agreements.

11 ECF No. 109 at 17. They argue that, because the arbitration was compelled under the Group 11

12 Guaranty Agreement, the parties who were not signatories to that agreement were not subject

13 to the arbitration provision therein. *Id.* at 19–20. They cite to both federal and New York law

14 that requires a written agreement to arbitrate to compel arbitration. *Id.* at 18 (citing 9 U.S.C. § 2;

15 N.Y. C.P.L.R. § 7501). And New York case law dictates that a party may not be compelled to

16 arbitrate "unless the evidence establishes the parties' 'clear, explicit and unequivocal' agreement

17 to arbitrate . . . ." *Id.* at 18–19 (quoting *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs.,*

18 *LLP*, 6 N.Y.3d 371, 374 (2006) and citing *Perez v. Discover Bank*, 74 F.4th 1003 (9th Cir. 2023)).

19 They argue that the tribunal's Award was "completely irrational" because it failed to draw its

20 essence from the agreement by binding non-signatories. *Id.* at 17–19 (citing *Aspic Eng'g & Constr.*

21 *Co.*, 913 F.3d at 1166 and *Sw. Reg'l Council of Carpenters v. UpRight Shoring & Scaffold, Inc.*, 2018 U.S.

22 Dist. LEXIS 39327, at *20 (S.D. Cal. Mar. 8, 2018)).

23      In their response, defendants argue that the law of the case doctrine applies because the

24 district court already held that "defendants—signatory and nonsignatory alike—may compel

25 arbitration" against all Plaintiffs on all claims through "common[] law theories of estoppel and

26 agency." ECF No. 117 at 20 (quoting ECF No. 70 at 30–31).

"The law of the case doctrine . . . precludes a court from reexamining an issue previously decided . . . in the same case." *S. Or. Barter Fair v. Jackson Cnty., Or.*, 372 F.3d 1128, 1136 (9th Cir. 2004) (citation omitted); *see also Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Law of the case doctrine "ensures the finality of legal issues decided in an earlier proceeding in the same suit," and "promotes and maintains 'consistency[.]'" *In re Gorilla Coompanies, Inc.*, 2014 WL 1246358, at *8 (D. Ariz. Mar. 26, 2014) (quoting *Arizona v. California*, 460 U.S. 605, 619 (1983) and *United States v. Mills*, 810 F.2d 907, 909 (9th Cir. 1987)) (alteration in original). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)). Courts have discretion to apply this doctrine. *Id.* (citing *Mills*, 810 F.2d at 909).

However, law of the case doctrine may not apply where "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

Plaintiffs argue in their reply that the law of the case doctrine does not apply here because the court's statement that non-signatories are bound by the contract was merely dicta, and dicta has no preclusive effect. ECF No. 121 at 4, 6 (citing *Rebel Oil Co. v. Atl. Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998)). They contend that it was defendants who sought to have the tribunal decide "gateway jurisdictional issues," which included "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Id.* at 4–5 (quoting ECF No. 24 at 12–13). They note that the court agreed with defendants and delegated the case's jurisdictional issues to the tribunal. *Id.* at 5 (citing ECF No. 70 at 29 ("[A]ny argument plaintiffs make about which claims can and cannot be arbitrated are for the arbitrator

to resolve.")). Plaintiffs argue that binding non-signatories to arbitration is an arbitrability issue that the court delegated, and therefore the statement that the non-signatories can compel arbitration and are bound by the arbitration had no effect. *Id.* at 5–6. I disagree.

Contrary to plaintiffs' assertions, the claims that can and cannot be arbitrated are irrelevant to the question of *who* can bring those claims, and *against whom.* Regarding claim arbitrability, this court previously held that "[b]ecause the ICC Rules, as incorporated by the guaranty, delegate claim-arbitrability questions to the arbitrator, any argument plaintiffs make about which claims can and cannot be arbitrated are for the arbitrator to resolve." ECF No. 70 at 29 (citing *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017)). In the order compelling arbitration, the court addressed arbitrability and binding of non-signatories in separate sections as separate issues because who can compel and be bound by an arbitration decision has nothing to do with the "which *claims* can and cannot be arbitrated." *Id.* at 29–30 (emphasis added). It is disingenuous for plaintiffs to now argue that the emphatic order stating in plain language that "[b]oth signatory and nonsignatory defendants may enforce the arbitration agreement against both signatory and nonsignatory plaintiffs" (*Id.* at 30) is "[a]t best . . . dicta" (ECF No. 121 at 6). I therefore find that the law of the case doctrine applies to the court's previous finding that "defendants—signatory and nonsignatory alike— may compel arbitration." ECF No. 70 at 30.

### 3. *The tribunal did not manifestly disregard applicable law by failing to grant plaintiffs nominal damages on their breach of contract claim.*

An arbitration award may be overturned if it exhibits a manifest disregard for the law. *Sanchez*, 878 F.3d at 1221. However, to demonstrate "manifest disregard for the law" it "is not enough . . . to show that the [arbitrator] committed an error–or even a serious error." *Lagstein*, 607 F.3d at 641 (quoting *Stolt-Nielsen S.A v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). The court "must be persuaded that the arbitrators understood but chose to disregard a clearly defined law or legal principal applicable to the case before them" and that "error must be so

palpably evident as to be readily perceived as such by the average person qualified to serve as an arbitrator." *Parkridge Ltd. V. Indyzen, Inc.*, 2020 WL 12834398, at *3 (N.D. Cal. Mar. 2, 2020) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 385 (2d Cir. 2003) (internal quotations omitted)). Plaintiffs must show "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *HayDay Farms*, 55 F.4th at 1240. "To demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Id.* At 1241. "There must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Id.* Thus, it "must be clear from the record that the arbitrators recognized the applicable law and then ignored it" in a "clear and obvious" way. *LaTour v. Citigroup Glob. Mkts., Inc.*, 544 F. App'x 748, 749 (9th Cir. 2013). Failure of an arbitrator to explain its reasoning is *not* grounds to find an error because "[a]rbitrators need not provide reasons for their findings, but are presumed to have applied the law appropriately." *Id.* at 749.

Plaintiffs take umbrage with the tribunal's decision that they were not entitled to nominal damages because the applicable New York law states that, in breach of contract actions, "actual damages are not an essential element, and nominal damages are recoverable to vindicate contract rights." ECF No. 109 at 21–22 (quoting *Perry v. McMahan*, 164 A.D.3d 1488, 1489–90 (App. Div. 2nd Dept. 2018)). They argue that the tribunal was aware of this law because plaintiffs cited it in closing arguments and submitted additional briefing on the issue of nominal damages discussing this law. *Id.* at 22.

According to plaintiffs, the Group 11 Loan Agreement expressly required CEIF to disclose events of default or any development that would have a Material Adverse Effect on the Project, as well as litigation, arbitration, or government investigation or threats thereof, and other information, including previously prepared reports, contracts, schedules, lists, documents, agreements and instruments concerning the Project. *Id.* (Group 11 Loan Agreement, Pls.' Ex. No.

21, ECF No. 111-2 at 678–81). The tribunal concluded that CEIF breached its disclosure obligation: "[t]he dispute and the underlying claims of defects ought to have been reported under Section 5.1(e) if [CEIF] knew of it[,]" and "this dispute could have had serious financial repercussions on the financial position of TSE and ultimately [CEIF]. The arbitration and underlying dispute is also a Material Adverse Effect and ought to have been reported by [CEIF] if it was aware of it." *Id.* (quoting Award, Pls.' Ex. No. 19, ECF No. 111-2, at 478)). The arbitrators "presume[d] the arbitration was known to [CEIF] and ought to have been disclosed." *Id.* at 22 (quoting Award, ECF No. 111-2, at 478). The tribunal nonetheless dismissed CMB 11's breach of contract claim because CMB 11 failed to show it was harmed: "the Group [11] loan was paid in full in April of 2018. [CMB 11] can have no claim against any Respondent. It was not injured in any way. Claim 1 is dismissed as regards [CMB 11]." *Id.* at 23 (quoting Award, ECF No. 111-2, at 478). Plaintiffs argue that the tribunal should have found that CMB 11 was the prevailing party, even if only on nominal damages. *Id.* They argue that this was a material issue because the failure to so do failure to do so affects the distribution of attorney fees. *Id.* at 23–25.

Plaintiffs compare the arbitrators' decision to that in *American Postal Workers Union v. U.S. Postal Service*, in which the Ninth Circuit held that an arbitrator's decision manifestly disregarded applicable law when it made a contradictory ruling. 682 F.2d 1280, 1284 (9th Cir. 1982). Specifically, the arbitrator's factual findings led to the conclusion that the plaintiff employee—who was seeking reinstatement after being fired for participating in an illegal strike—(a) was an employee who was not permitted to strike and (b) who had, in fact, participated in a strike. ECF No. 109 at 21 (citing *id.* at 1283–84). The arbitrator had nonetheless found that the employee was entitled to reinstatement. *Id.* (citing *American Postal Workers Union*, 682 F.2d at 1283).

In response, defendants argue that plaintiffs' arguments fall short of demonstrating the tribunal "recognized the applicable law and then ignored it" in a "clear and obvious way." ECF No. 117 at 24 (quoting *LaTour*, 544 F. App'x at 749). They argue that CMB's claim for nominal

damages was untimely, but the tribunal still considered it and then rejected their claim outright. *Id.* (citing Award, ECF No. 111-2, at 465). Specifically, the tribunal found that this was not a case where it was appropriate to "vindicate[e] [contract] rights" because CMB had "not demonstrated the purpose or utility of vindicating [CMB 11]'s rights" because "this was simply a commercial loan that was paid in full." Award, ECF No. 111-2 at 465. The tribunal found that this is "not a case of breach of contract, causing damages that cannot be proved." *Id.* The tribunal observed that CMB 11 advanced the claim for nominal damages "more than five years after it has been repaid," and found that "[t]o award nominal damages here, where the full amount has been paid to [CMB 11,]" as was the case here, "would serve no purpose[,]" under applicable law. *Id.* at 466.

Defendants also argue that plaintiffs are incorrect about the law, although even an arbitrator's incorrect interpretation of law is not enough for a claim to be manifestly unjust. ECF No. 117 at 26. They also note that none of the cases cited by the plaintiffs state that the awarding of nominal damages is required, but instead only support the argument that nominal damages are discretionary. *Id.*

In their reply, plaintiffs respond that requiring CMB 11 to "demonstrate[] the purpose or utility of vindicating [its contractual] rights" ignores New York law, imposing a quantifiable damages hurdle that does not exist. ECF No. 121 at 8–9. Plaintiffs cite several additional cases in support of this argument.[10] *Id.* Separately, plaintiffs contend that defendants' argument that plaintiffs expressly sought—and were denied—nominal damages runs afoul of Supreme Court precedent: "[n]ominal damages are not a consolation prize for the plaintiff who pleads, but fails

---

[10] *Hirsch Elec. Co. v. Cmty. Servs., Inc.*, 145 A.D.2d 603, 605 (App. Div. 2nd Dept. 1988) ("[I]t is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any."); *McCoy Assocs. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) (noting that, "'whenever there is a breach of a contract or the invasion of a legal right[,] the law infers some damage.' Accordingly, summary judgment should be granted where, as here, the existence of a contract and its breach have been established, regardless of the certainty of damages.") (alterations in original).

to prove, compensatory damages. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages." ECF No. 121 at 10 (quoting *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021)). Finally, plaintiffs argue that nominal damages are not discretionary. *Id.*

The parties spill much ink about whether the arbitrators incorrectly applied the law, but reaching this decision is not necessary. Even if plaintiffs are correct and the tribunal's decision was contradictory by simultaneously finding (1) a material breach of the contract but (2) failing to recognize that the plaintiffs were entitled to nominal damages, plaintiffs have not shown that the arbitrators "ignored" the law in a "clear and obvious way." *LaTour*, 544 F. App'x at 749.

Plaintiffs' argument is only that the tribunal was aware of New York law because plaintiffs cited it in closing arguments and submitted additional briefing on the issue of nominal damages discussing it. ECF No. 109 at 22 (citing Hr'g tr., Pls.' Ex. No. 18, ECF No. 111-2 at 128–29). This is the extent of the argument before the tribunal that plaintiffs cite:

> the law in New York is that in a breach of contract action, actual damages are not an essential element of a breach of contract claim, and nominal damages can be recovered to a contract right. We acknowledge that Group XI was paid in full. But that fact alone doesn't prevent Group XI from prevailing on this claim. And that of course becomes relevant, I know, Mr. Casey, in the email you received, the discussion of costs will be addressed at a later point.

> But when the Tribunal asks why do you care about a loan that's been paid in full, well, there were important contractual rights that Group XI was entitled to that it was deprived of. So it is entitled to at least an award of nominal damages for that particular claim.

Hr'g tr., ECF No. 111-2 at 128–29.

In their supplemental briefing, plaintiffs referenced several cases that all stood for the proposition that nominal damages could be awarded, or were properly awarded, but did not affirmatively establish that nominal damages are automatically awarded. Pls.' Ex. 13, ECF No. 111-1 at 596–97. In *Ross v Sherman*, the New York appellate court affirmed an award of nominal damages, noting that the plaintiffs had not established actual damages. 95 A.D.3d 1100, 1100

(N.Y. App. Div. 2d Dept. 2012). The appellate court never specified whether those nominal damages were discretionary or automatic. *Id.* As was the case in *Perry v. McMahan*, the court, citing *Ross*, stated that "nominal damages are recoverable to vindicate contract rights." 164 A.D.3d 1488, 1489 (N.Y. App. Div. 2d Dept. 2018). That they *are* recoverable is not the same as a statement that they are automatically recoverable or must be awarded. The other cases plaintiff cited[11] similarly leave ambiguous the extent to which nominal damages are a required remedy. Only in *Quik Park W. 57 LLC v. Bridgewater Operating Corp.* is there any indication that there is an automatic entitlement to nominal damages. 189 A.D.3d 488, 489 (App. Div. 1st Dept. 2020) ("The trial court correctly concluded that plaintiffs failed to prove actual damages and therefore were entitled to nominal damages only.") It is not until their reply to this motion that plaintiffs quote the U.S. Supreme Court, which stated that "[n]ominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages." *Uzuegbunam*, 592 U.S. at 279.

In the Award, the tribunal first described the circumstances of plaintiffs' submission of their nominal damages argument: the argument was first raised in plaintiffs' closing submissions and the tribunal provided them the opportunity to brief their argument. Award, ECF No. 111-2 at 418–19. The tribunal also received briefing from defendants, citing several cases and stating that "New York law does not allow for the recovery of nominal damages where the plaintiff fails to prove that a contractual breach caused damages, albeit an amount of quantum of damages that cannot be proven with certainty[.]" *Id.* at 419 (quoting defendants' response to plaintiffs' nominal damages submission). Based on these competing arguments, both supported by case law, the tribunal found that the nominal damages argument was an independent claim. *Id.* It

---

[11] *Freund v. Wash. Square Press, Inc.*, 34 N.Y.2d 379, 383–84 (1974); *AB Oil Servs., Ltd. v. TCE Ins. Servs., Inc.*, 188 A.D.3d 624, 628 (App. Div. 2nd Dept. 2020); *C.K.S. Ice Cream Co. v. Frusen Gladje Franchise, Inc.*, 172 A.D.2d 206, 208 (App. Div. 1st Dept. 1991); and *Tradex Eur. SPRL v. Conair Corp.*, 2008 U.S. Dist. LEXIS 37185, at *18 (S.D.N.Y. May 6, 2008).

then determined, after reviewing *Perry v. McMahan* and *Ross v. Sherman*, the first two cases that the plaintiffs cited and discussed in their submission, that nominal damages were inappropriate. *Id.* at 465–66.

Regardless of whether the tribunal was correct on its interpretation of the law, I see nothing in these facts that the arbitrators "ignored" the law in a "clear and obvious way." *LaTour*, 544 F. App'x at 749. The law presented to the tribunal was not conclusive and the tribunal made a decision, largely based on the first two cases that *the plaintiffs themselves presented to it.* Therefore, the plaintiffs' motion to vacate the arbitration Award is denied.

### B.   Defendants' motion to compel arbitration on claims 7–10 (ECF No. 93)

The defendants file a motion seeking to compel arbitration of claims 7 through 10. ECF No. 93. Unlike claims 2–5, which arise out of the Group 11 Loan Agreement and Guaranty, claims 7 through 10 concern the TSI Agreement between SRCSP and CEI and the claimants' rights as assignees of claims of SRCSP. Am. Compl., ECF No. 1-2 at 37–39; *see also* Award, ECF No. 111-2 at 433. Although these claims were before the arbitrating tribunal along with the others, it found that because "[n]one of these Claims come within the scope of the agreements to arbitrate found in the Group [11] Loan Agreement or the Guaranty[,]" the tribunal lacked jurisdiction to arbitrate them. Award, ECF No. 111-2 at 433–36.

As a threshold matter, the plaintiffs, in their response to this motion, do not challenge the underlying argument that the TSI Agreement applies to claims 7 through 10. Defendants' motion focuses mainly on this issue. *See* ECF No. 93. Instead, plaintiffs raise only the issue of waiver through litigation conduct. *See* ECF No. 115. The waiver issue is twofold. The court must first decide whether this is a question for the court or for the arbitrator. If it is a question for the court, then I am left to determine whether the defendants waived their right to compel arbitration of claims 7 through 10 under the TSI Agreement through their litigation conduct. I find that this is a question for the court, and that defendants have not waived their right to compel the arbitration.

### 1. *Whether defendants waived their right to compel arbitration of claims 7–10 under the TSI Agreement is a question for the court to decide.*

Article 6(3) of the ICC Rules provides that "if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement . . . the arbitration shall proceed and any question of jurisdiction . . . shall be decided directly by the arbitral tribunal." As a general rule, the incorporation by reference into an arbitration agreement of this language "makes clear that the arbitrators are vested with the authority to determine questions of arbitrability." *Portland Gen. Elec. Co.*, 862 F.3d at 985. However, there is a presumption that the court is the proper forum to decide whether a party has waived the right to compel another to arbitrate a dispute based on its litigation conduct. *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). To overcome this presumption, the arbitration agreement must clearly reflect an intent to make such delegation. *Id.* at 1123–24.

There is no indication whatsoever from the TSI Agreement that waiver of the right to compel arbitration through litigation conduct was delegated to the arbitrating tribunal, let alone evidence of a clear intent. *See* TSI Agreement, ECF No. 94-1 at 71–73. Therefore, I find that the issue of waiver through litigation conduct is for the court to decide, and I address it below.

### 2. *Defendants did not waive their right to compel arbitration of claims 7–10 through their litigation conduct.*

"[W]aiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002). "[T]he party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (citation omitted). "[T]here is no longer a thumb on the scale in favor of arbitration, and that the party opposing arbitration no longer bears a 'heavy burden' to show waiver of the right to arbitration." *Id.* at 1016.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin*, 829 F.3d at 1125. "[R]ather, we consider the totality of the parties' actions." *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019) (citing *id.* at 1126). However, "a party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (quoting *Newirth*, 931 F.3d at 941).

Plaintiffs argue that defendants waived their right to compel arbitration under the TSI Agreement's arbitration provision because defendants failed to act as if they intended to enforce the provision. ECF No. 115 at 11. In support of their argument, plaintiffs note that defendants did not comply with the TSI Agreement forum selection clause by removing this case to the District of Nevada, even though the TSI Agreement set "the federal courts of the United States located in Los Angeles, California, and the courts of the State of California located in Los Angeles, California" as the exclusive forum for moving to compel arbitration proceedings. *Id.* at 12–13 (quoting TSI Agreement, ECF No. 94-1 at 73). Plaintiffs offer a timeline of events that they argue establishes litigation conduct that constitutes waiver.[12] When seeking arbitration, defendants made the strategic decision to only rely on the Group 11 Loan and Guaranty Agreements so that they could rely on the New York convention arbitration rules. *Id.* at 13. CMB requested arbitration in the ICC following the court's order, and the defendants answered but did not reference the arbitration provision in the TSI LLC agreement. *Id.* at 14. When CMB argued to the ICC that the order granting Cobra defendants' motion to compel arbitration did not apply to CMB's claims under the TSI Agreement because defendants omitted the TSI Agreement's arbitration provision from their motion, defendants responded that they "were not required to

---

[12] For ease of reproducing this timeline, the facts are as alleged by the plaintiffs and do not represent findings of the court.

seek arbitration under the arbitration clause in the TSI LLC Agreement." *Id.* (quoting response to plaintiffs' application to contest arbitrability, ECF No. 116 at 131). In that same response, defendants further argued that "[b]ecause all of [CMB's] claims pertain to the same debt collection efforts and allege the same underlying conspiracy," all CMB's claims, including those under the TSI Agreement "belong in the same arbitral proceeding." *Id.* (quoting ECF No. 116 at 137). Also, the terms of reference submitted to the ICC panel only contained the Group 11 Loan Guaranty Agreements' arbitration provisions, not the TSI Agreement's. *Id.* at 14–15. It was not until arbitration discovery, when defendants then "requested production of voluminous documents from CMB relating to CMB's claims under the TSI LLC Agreement," that the Cobra defendants raised the TSI as an issue. *Id.* at 15. Additionally, defendant TSE, by seeking a merits determination on a motion to dismiss and not seeking to compel arbitration at all, demonstrated waiver through its litigation conduct. *Id.* at 13. Similarly, defendant ACS also filed a motion to dismiss for lack of personal jurisdiction and then made no effort to enforce the TSI Agreement. *Id.* at 14.

The defendants respond to the waiver argument in their reply, contending that waiver of arbitration based on litigation conduct requires litigation of the merits in court for a prolonged period. ECF No. 123 at 9. They argue that lacking a long period of litigation, as is the case here, litigation conduct cannot constitute a waiver. Whether a party has "actively litigat[ed] the merits of a case for a prolonged period of time in order to take advantage of being in court" turns on "the totality of the parties' actions" which must "holistically . . . 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims.'" *Armstrong,* 59 F.4th at 1015 (quoting *Hill v. Xerox Bus. Servs., LLC,* 59 F.4th 457, 473 n.19 (9th Cir. 2023). Defendants cite to a series of cases where litigation conduct constituted waiver, all of which involved lengthy *litigation* before the party sought to compel arbitration. ECF No. 123 at 9 (citing *Hill,* 59 F.4th at 473 (recounting Xerox's "six-year appellate journey aimed at judicially resolving the merits" of the claims against it); *Martin,* 829 F.3d at 1126 (litigating in federal court for over a year, "filing a

motion to dismiss on a key merits issue," and only moving to compel arbitration after losing); and *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (litigating in federal court for two years and then seeking dismissal on the merits)). By comparison, defendants argue that they have consistently sought to compel arbitration on all claims and have in no way "take[n] advantage of being in court" to this point. *Id.* at 9–10 (quoting *Armstrong*, 59 F.4th at 1015). Defendants respond to each of plaintiffs' listed events that plaintiffs claim constitute waiver by litigation conduct.[13] As to the forum selection clause, CMB was the party that decided to file the initial suit in Nevada instead of California as was required by the TSI Agreement, and then did not object when defendants moved to compel arbitration. *Id.* at 10–11 n.5. Cobra defendants moved to compel arbitration under the Group 11 Loan and Guaranty Agreements because they "arguably applied to all claims," but regardless of what agreement the defendants chose to invoke, moving to compel arbitration does not itself constitute an act inconsistent with the right to compel arbitration. ECF No. 123 at 6–7. I agree with ACS in that their motion to dismiss did not waive its arbitration right because seeking dismissal "on jurisdictional . . . grounds is not inconsistent with a known right to compel arbitration because such motions do not seek a judicial determination on the merits." ECF No. 123 at 8 (quoting *Newirth*, 931 F.3d at 942 n.10). Finally, TSE's motion to dismiss did not cause it to waive its right to arbitration because TSE was not served and did not appear in the case until after the Cobra defendants had already moved to compel arbitration and TSE explicitly asked the court to stay the case if the Cobra defendants' motion to compel was granted. ECF No. 123 at 8 (citing ECF No. 60). Defendants cite to *United Specialty Insurance Company v. Clean & Sober Media LLC*, where the U.S. District Court for the Central District of California noted that the Ninth Circuit "has never held that a single motion to dismiss on the merits conclusively demonstrates acts inconsistent with the right to compel arbitration" and "[i]nstead, the Ninth Circuit has found waiver where a

---

[13] For ease of reproducing this responsive timeline, the facts are as alleged by the defendants and do not represent findings of the court.

motion to dismiss was coupled with prolonged delays ranging from nine to eighteen months and significant additional litigation activity." 2021 WL 3623300, at *4 (C.D. Cal. Apr. 16, 2021). The defendants also argue that it is disingenuous for plaintiffs to argue that TSE waived its right to arbitration after CMB voluntarily named TSE as part of the arbitration, even after the court did not order TSE's involvement, and TSE then willingly participated in the arbitration. ECF No. 123 at 8–9.

The defendants, including ACS and TSE, have not waived their right to compel arbitration under the TSI Agreement. The case law is perfectly clear that "litigation conduct" waiver is about a party first trying to take advantage of the court and, after not getting its way, trying to arbitrate later. That is simply not the case here. Although defendants did not raise the TSI Agreement until later in the arbitration process when they were seeking discovery, they were undoubtedly trying their very hardest to arbitrate all claims—including claims 7 through 10—and were operating under the assumption they could do so using the Group 11 Loan and Guaranty Agreements. The fact that the Tribunal disagreed with this assumption is not sufficient grounds for a finding that defendants' litigation conduct demonstrates a waiver of their right to compel arbitration. In fact, it demonstrates a substantial desire on the defendants' part to have this case decided through arbitration. From the cases that both parties cite, the presence of *litigation* is a key component of the litigation conduct question. Even in *Hardwick v. Hoovestol, Inc.*, to which plaintiffs cite, the court found that the defendants had waived their right to compel arbitration based on the fact that "[t]his case has been litigated for *three years* in this forum" and "[n]owhere in Defendants' Answer or Rule 26(f) Reports do they mention an intent to compel arbitration." *Hardwick*, 2023 U.S. Dist. LEXIS 65984, at *8 (C.D. Cal. Apr. 14, 2023). By contrast, defendants here have made clear their intention to arbitrate claims 7 through 10 from the beginning. Although plaintiffs no longer must overcome a presumption favoring arbitration, *Armstrong*, 59 F.4th at 1016, the totality of the circumstances nonetheless demonstrate that the defendants have not waived their right to arbitrate.

1    Regarding ACS, the *Newirth* decision is instructive. Because the Ninth Circuit has already

2  weighed in that seeking dismissal on jurisdictional grounds "is not inconsistent with a known

3  right to compel arbitration because such motions do not seek a judicial determination on the

4  merits[,]" I find that this action does not weigh in favor of a finding that ACS waived its right to

5  compel arbitration. *Newirth*, 931 F.3d at 942 n.10.

6    Regarding TSE, although this poses a more difficult question because TSE sought

7  dismissal on the merits (ECF No. 60), I nonetheless agree with defendants that it has not waived

8  its right to compel arbitration. CMB voluntarily brought TSE into the arbitration, and TSE

9  vigorously participated in the arbitration. Although the motion to dismiss on the merits

10  constituted an "intentional act[ ] inconsistent with [the] existing right" to compel arbitration,

11  TSE's willing participation in the arbitration process after its motion weighs strongly in favor of

12  a finding that it did not intentionally waive its right. Because there has been no waiver, and the

13  plaintiffs do not raise any other issues with the motion, defendants' motion to compel

14  arbitration on claims 7 through 10 is granted.

15    **C.  Defendants' cross-motion to confirm arbitration award (ECF No. 118)**

16    Defendants argue that they are entitled to pre-judgment and post-judgment interest on

17  the $2,437,221 the plaintiffs were ordered to pay under the Award. ECF No. 118 at 4–6. The

18  plaintiffs styled their opposition as a "reply" and submitted a document identical to their reply

19  regarding the motion to vacate. ECF No. 119.

20    "[P]ost-award, prejudgment interest is available in an action to confirm an arbitration

21  award under the . . . [New York] Convention." *Ministry of Def. & Support for the Armed Forces of the*

22  *Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1102 (9th Cir. 2011). There is "a general

23  presumption in favor of awarding prejudgment interest." *Traf Intercont'l Elektronik-Handels GmbH v.*

24  *Sonocine, Inc.*, 2019 WL 918987, at *4 (D. Nev. Feb. 25, 2019). Because the panel did not comment

25  on prejudgment interest, it remains at the discretion of the court. *Id.* at *4.

26

CMB is therefore ordered to pay prejudgment interest on the $2,437,221 that plaintiffs were ordered to pay under the Award starting from the Award date (January 5, 2024). The interest rate will be determined using "the interest rate prescribed in [28 U.S.C.] § 1961(a)." *Id.* at *5 (noting that "the Ninth Circuit utilizes . . . § 1961(a) for fixing the rate of prejudgment interest in cases brought under the court's federal question jurisdiction").

"Post-judgment interest on a district court judgment is mandatory" and "should be awarded on the entire amount of the judgment, including any pre-judgment interest." *Lagstein*, 725 F.3d at 1056 (citing 28 U.S.C. § 1961). Interest "runs from the date of the judgment until the judgment is satisfied." *NLRK, LLC v. Indoor Ag-Con, LLC*, 2023 WL 3724741, at *13 (D. Nev. May 30, 2023). CMB is therefore ordered to pay post-judgment interest on the on the $2,437,221 that plaintiffs were ordered to pay under the Award as well as the prejudgment interest. The calculations of this interest are specified in 28 U.S.C. § 1961, and the post-judgment interest amount runs from the date of this judgment until plaintiffs satisfy their obligations.

**III.    Conclusion**

IT IS THEREFORE ORDERED that plaintiffs' motion to vacate the arbitration award **(ECF No. 108) is DENIED**; defendants' motion to compel arbitration on claims 7–10 **(ECF No. 93 (unsealed); ECF No. 101 (sealed)) is GRANTED**, and defendants' cross-motion to confirm arbitration award **(ECF No. 118) is GRANTED.**

Plaintiffs are ORDERED to pay defendants prejudgment interest on the Award sum and are ORDERED to pay post-judgment interest on both the Award sum and the prejudgment interest amount in accordance with the interest calculations outlined in Section C.

The parties are ORDERED to arbitrate claims 7 through 10 in accordance with the arbitration guidelines set out in the TSI Agreement.

Dated: October 15, 2024

_____
Cristina D. Silva
United States District Judge